**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 170583-U

Order filed December 2, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0583 Circuit No. 15-CF-118 |
| | ) | |
| SIDNEY EVANS, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the judgment of the court.
Presiding Justice Schmidt and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The trial court did not abuse its discretion in denying defendant's request for standby counsel.

¶ 2     Defendant, Sidney Evans, appeals his convictions arguing that the court erred when it denied his request for standby counsel. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In 2015, defendant was charged by indictment with two counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2014)), one count of aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), and one count of unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). Defendant was originally appointed assistant public defender William Loeffel. However, defendant became unhappy when Loeffel would not adopt the motion to quash arrest and suppress evidence that defendant filed. Defendant asked for a new lawyer to be appointed. The court stated that it would not appoint a new lawyer. Defendant decided to proceed as a self-represented litigant, and Loeffel was discharged as counsel for defendant. Ultimately, the court decided to appoint a different assistant public defender, Hugh Toner, as counsel for defendant. At the following court date, defendant asked for Toner to be removed from his case because he would not file a motion to dismiss the indictment. Again, defendant asked the court to appoint him new counsel. The court would not do so, and defendant decided to proceed as a self-represented litigant. Defendant asked for "co-counsel" to be appointed. The court denied his request, but discharged Toner as defendant's counsel. Defendant filed his motion to dismiss and called Detective Jason Leigh as a witness during the hearing on his motion. The motion was denied. Defendant asked multiple times for "co-counsel" to be appointed, but his requests were denied.

¶ 5        The case proceeded to defendant's first jury trial. The evidence established that defendant and Demarco McClendon met through a personal advertisement that defendant had posted on Craigslist, engaged in sexual conduct, and then defendant shot McClendon multiple times in the back of the head. The State suggested that defendant shot McClendon because he was afraid McClendon would publicly reveal that defendant was gay. Defendant testified that he was acting in self-defense. He stated that he posted the advertisement looking for women, but McClendon

2

responded. Defendant went just to hang out with McClendon, but McClendon tried to force him to have sexual intercourse so defendant shot him. The jury found defendant guilty of all counts, but the court granted defendant's motion for a new trial because defendant had not been properly admonished of the potential sentences he faced.

¶ 6 Prior to defendant's second trial, the court again appointed Toner to represent defendant. Defendant, again, had issues with Toner, and the court allowed assistant public defender Kevin Lowe to be appointed in his stead. Defendant decided to proceed as a self-represented litigant, but asked for standby counsel. The court allowed defendant to represent himself, but denied his request for standby counsel. The evidence at the second trial was much the same as the first. Scott Bowers testified that he was a police officer with the Peoria Police Department, working for the crime scene unit. He took photographs of the blood spatter and spent shell casings, which were displayed to the jury. Defendant cross-examined Bowers regarding the location of the blood spatter and casings. While the jury found defendant guilty of unlawful possession of a weapon by a felon, they were deadlocked as to the other charges. Therefore, the court declared a mistrial as to the two attempted murder charges and the aggravated battery with a firearm charge.

¶ 7 The case proceeded to a third trial in front of a different judge. Prior to trial, the court asked defendant if he still wanted to represent himself. Defendant answered, "[y]es", then proceeded to state, "I've asked for side counsel and was denied it. But I'd prefer to represent myself with side counsel numerous times to Judge Kouri, but, you know, I was denied that right." The court stated that it was solely confirming defendant's desire to proceed as a self-represented litigant. Defendant had already filed motions to suppress and dismiss. The court stated that it would hear the motions on the day of trial and told defendant if he had any other motions he wished to file, he should do so.

¶ 8    On the day of trial, defendant noted that two state's attorneys were sitting at the State's table and asked, "I would like to say something for the record. I mean, if the State can have help, why couldn't I have standby counsel?" The court stated that it had directed him to file a motion if he wanted standby counsel. Defendant stated, "I remember you telling me to file a motion of some sort about something different. I don't think it was about that. I mean, I don't remember." The court said,

> "Okay. It was about that. And I'm thoroughly convinced, and the record shows, that you're quite capable of filing motions in that regard.
>
> But in any event, let's address the issue of standby counsel once again. What's your position on that orally, [defendant]?"

Defendant stated, "I mean, it don't really matter to me, to be honest. But I'm just saying, why was I denied that right if the State can have the right to have two prosecutors? I mean, like, I don't understand why I was denied that right." The court noted that defendant had the right to court-appointed counsel, which he waived, and stated, "You can have a full-timer sitting next to you. And you also have a right to represent yourself, which has been addressed previously." The court then stated:

> "So your point on that is misguided. You're bringing up the topic of standby counsel as related to the state's attorney's office having two attorneys sitting at their table. It doesn't connect. They're unrelated issues.
>
> Focusing only on your side of the case, your table, and the fact that you're here *pro se* today, you just mentioned moments ago it really doesn't matter to you if you have counsel or standby counsel or not. And that should be the end of the discussion.

4

"***

*** But I'm going to go a step further and address the factors to be considered in a standby counsel request, as referred to in, among other cases, *People versus Gibson*, 136 Ill. 2d 362. And based on my review of the file, and I want—I'll give each side a chance to weigh in on my comments here. But first of all, the nature and gravity of the charges are significant. They're Class X felonies, all three of them.

***

The nature and gravity of the charges are significant.

Secondly, the expected factual and legal complexity of the proceedings have been alleviated somewhat by the fact that this case has been tried twice already. Each side knows pretty much what's coming from the other side, in terms of having actual transcripts of what witnesses on each side was going to say.

***

*** As far as the legal issues in the case, those have been tried into the ground. And that's only meant to stress how the legal issues have been fully briefed and addressed. And there's more yet to come this morning. So in that regard, it is not a significant factor for granting standby counsel.

Next, the abilities and experience of the defendant. In this case, [defendant] is extremely experienced in legal ways for a *pro se* defendant. He, in fact, actually has under his belt a trial already *pro se*, which resulted in a hung jury on three counts."

The court denied standby counsel.

¶ 9 The evidence at the third trial was much the same as the previous two trials. The jury found defendant guilty of all three counts. Defendant filed a motion for a new trial, alleging, *inter alia*, "I previously elected to have standby counsel and was asked by the Judge were [*sic*] do I stand on that and I stated it don't even matter meaning my knowledge of knowing I would be denied that request due to it being denied numerous of times." The court denied the motion.

¶ 10 A presentence investigation report shows that defendant was 24 years old. He had not completed high school, but was working on his high school equivalency certificate. Defendant had a criminal history, including theft, battery, and residential burglary juvenile adjudications and an adult felony residential burglary conviction that he was on parole for when he committed this offense. Defendant was sentenced to 42 years' imprisonment.

¶ 11 II. ANALYSIS

¶ 12 On appeal, defendant contends that the court erred in failing to appoint him standby counsel. We find that the court did not abuse its discretion in failing to appoint defendant standby counsel where defendant had experience with the criminal justice system, had proceeded as a self-represented litigant in the two previous trials that involved the same evidence, one of which resulted in a hung jury, and the case was not particularly complex.

¶ 13 At the outset, we note that defendant did not specifically move for standby counsel prior to his third trial. Defendant asked why he was not granted it previously. The court gave him the opportunity to file a motion, which he did not do, despite having filed other motions. In fact, defendant stated that it did not really matter to him whether he was granted standby counsel. Nonetheless, the court considered whether to grant him standby counsel.

¶ 14 "A *pro se* defendant does not have a right to standby counsel, but since there is no state statute or court rule to the contrary, such appointment is permissible." *People v. Ware*, 407 Ill.

App. 3d 315, 349 (2011). We review the court's failure to appoint standby counsel for an abuse of discretion. *People v. Gibson*, 136 Ill. 2d 362, 379 (1990). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). In determining whether to appoint standby counsel, the court should consider: (1) the nature and gravity of the charge, (2) the expected factual and legal complexity of the proceedings, and (3) the abilities and experience of the defendant. *Gibson*, 136 Ill. 2d at 380.

¶ 15    Here, the court weighed the *Gibson* factors. It found that the first factor weighed in favor of defendant, as the attempted murder charges defendant faced were serious and carried a significant penalty. However, it found the other two factors weighed against granting standby counsel. It noted that defendant had already had two trials in the case. The complexity of the case was mitigated by the fact that defendant had already heard and seen all the evidence that was going to be presented on two separate occasions. There were no expert witnesses. The court found that the abilities and experience of defendant also weighed against appointing standby counsel. Defendant had effectively represented himself in two trials. He had cross-examined witnesses and filed motions. During his second trial he successfully cast doubt on the State's theory of the case, and the trial resulted in a hung jury. The record shows that defendant's own advocacy had actually become more zealous by the third trial. Moreover, defendant had previous experience with court proceedings through his criminal history. While defendant was only 24 and had not completed high school, this was outweighed by the experience and abilities that he exhibited in this case. We cannot say that the court's decision was arbitrary, fanciful, or unreasonable. Therefore, we do not find that the court abused its discretion.

¶ 16                                III. CONCLUSION

7

¶ 17   The judgment of the circuit court of Peoria County is affirmed.

¶ 18   Affirmed.